Frank C. Guetter, Plaintiff, v. Hooker Glass & Paint Manufacturing Company, Defendant and Counter-Plaintiff Appellee, and Harry A. Green and Son, Inc., Defendant and Counter-Defendant, Highway Casualty Company, a Corporation, Garnishee Defendant-Appellant.
On Appeal of Highway Casualty Company, a Corporation, Garnishee Defendant-Appellant, and Highway Insurance Company, Its Successor.

Gen. No. 49,305.

First District, First Division.
June 29, 1964.

Brody & Gore and Robert B. Johnstone, of Chicago, for appellant.

Bell, Boyd, Lloyd, Haddad & Burns, of Chicago (Thomas R. McMillen and John C. Christie, Jr., of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a garnishment proceeding, arising out of a personal injury suit brought against defendants. Defendant Green's insurer, garnishee-defendant Highway Casualty Company, appeals from a $10,000 judgment in favor of defendant Hooker Glass on its counterclaim against its codefendant, Green.

The record shows that Hooker Glass, as a retailer, bought a stepladder from Highway's insured, Harry A. Green and Son, Inc., a manufacturer. Hooker Glass then sold the ladder at retail to plaintiff, Frank C. Guetter, who was injured when the ladder broke. Guetter sued both Green, as manufacturer, and Hooker Glass, as the retailer, and recovered a general verdict and judgment of $16,250 against both defendants on

February 14, 1961. Highway, on behalf of its insured, Green, the manufacturer, paid Guetter $10,000 on his judgment, and Hooker Glass paid the balance.

After the satisfaction of the original judgment, Hooker Glass proceeded with its pending counterclaim against Green, then a bankrupt. The counterclaim was based on the alternative theories of (a) active-passive negligence, with ultimate liability falling upon Green as the active tort feasor, and (b) implied liability arising under the Uniform Sales Act.

In a nonjury trial, Judge Wilbert F. Crowley on October 13, 1961, entered a judgment order against counterdefendant Green and in favor of counterplaintiff Hooker Glass, in the sum of $11,350. The order referred to the February 14, 1961, judgment and found "the evidence and the verdict of the jury and the judgment entered thereon is binding upon the counterdefendant Harry A. Green and Son, Inc., as to the matters at issue in the trial of the Complaint of Frank C. Guetter, and these issues cannot be further litigated between the parties to the counterclaim," and made affirmative findings for the counterplaintiff both on the theory of a breach of implied warranties under the Uniform Sales Act and on the theory that counterdefendant, manufacturer Green, was guilty of active negligence, and the counterplaintiff, retailer Hooker Glass, was guilty of passive negligence.

The order further found the counterplaintiff, Hooker Glass, tendered the defense of the litigation to counterdefendant, Green, by letter dated November 18, 1954, which tender of defense was wrongfully declined by counterdefendant, Green, rendering it "liable for the reasonably foreseeable damages accruing from said wrongful refusal." The order allowed $5,000 for attorney's fees and $100 for costs, in addition to the $6,250 Hooker Glass had paid to plaintiff Guetter. The court further found that there was no triable issue of

fact to which the counterdefendant was entitled to a trial by jury.

Hooker Glass, to enforce its judgment on the counterclaim against Green, then garnisheed Green's insurance company, Highway Casualty Company, which answered, "No funds." Highway's answer was contested by Hooker Glass, and after an extensive hearing, in which no testimony was taken, Judge Arthur A. Sullivan on May 22, 1963, entered a judgment order in the garnishment proceeding, based on the judgment order of October 13, 1961, and the insurance policy. The court found "that counterplaintiff is a person who sustained damages arising out of the bodily injury of the plaintiff Frank C. Guetter within the meaning of said section 6 [of the policy], that this proper interpretation appears from the face of said insurance policy and is not dependent upon extrinsic evidence." The court entered judgment against Highway, as garnishee, and in favor of Hooker Glass for $10,000, which was the alleged balance of the $20,000 coverage for one accident. This is the judgment order appealed from.

Highway's determinative contention is that the trial court misconstrued the policy provisions and exclusions, in that plaintiff Guetter was the "only person injured" within the meaning of the policy, and the payment of $10,000 to him in part satisfaction of his $16,250 judgment against Green and Hooker Glass exhausted Highway's liability. Our disposition of this contention makes it unnecessary to consider at length Highway's other contention that the counterclaim judgment, on which the garnishment is based, "was utterly void and of no effect because it was in excess of the court's jurisdiction and as such, subject to attack, direct or collaterally at any time."

We have scrutinized all of the proceedings in this record leading up to and including the entry of the

judgment order of October 13, 1961, and find no merit to Highway's contention that it is a void order. In the absence of a timely appeal from that judgment order, we conclude that it was final and valid at the time of the entry of the garnishment judgment on May 22, 1963.

We next consider Highway's contention that its policy did not afford coverage for Hooker's claim for indemnity, and that plaintiff Guetter himself was the only person injured within the meaning of the policy and its exclusions and conditions. The exhibits show that the "Limits of Liability" were $10,000 each person, $20,000 each accident, and $20,000 aggregate, with coverage for "(A) Bodily Injury Liability." The following provisions of the policy are pertinent to the instant issue.

### "INSURING AGREEMENTS

"1.  Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined as are indicated by specific premium charge in the Declarations.

"  . . .

### "CONDITIONS

"6.  Limits of Liability—Coverage A

"The limit of liability stated in the declarations as applicable to 'each person' is the limit of the

168

Company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person in any one accident; the limit of such liability stated in the declarations as applicable to 'each accident' is subject to the above provision respecting each person, the total limit of the Company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons in any one accident. Under division 4 of the Definition of Hazards, if goods or products from one prepared or acquired lot shall produce bodily injury to or sickness, disease or death of more than one person, all bodily injuries, sicknesses, diseases and deaths proceeding from such common cause shall be considered as arising out of one accident."

In summary, Highway argues in reference to the above provisions, that Hooker's claim is for indemnity, and that indemnity liability was specifically excluded when no premium was paid for "Division 5 Contractual" liability hazard; that the only hazard covered was under "Division 4 Products (including completed operations) Ladders—including chair, step or stool ladder"; that the policy excludes "liability of others assumed by the insured under any contract or agreement"; and that under the Conditions provision, Hooker was not a person who sustained damages arising out of bodily injury.

Hooker Glass contends that the policy clearly covered its claim as consequential damages, because the insured's liability to the retailer is a "liability imposed . . . by law." Hooker Glass argues, "The liability of the insured to the appellee retailer was not

assumed under any contract or agreement. It was imposed by law. If the manufacturer had assumed appellee's defense as tendered, this might conceivably have constituted a contract, but the insured rejected it, thus negativing any such contractual obligation. The obligation, imposed by law, is specifically covered by Coverage A of the Insuring Agreements." Hooker further argues, "But in fact the Insuring Agreement promises payment of all sums for 'damages' sustained by any person or persons. The word 'damages' in Coverage A is expanded by the phrase 'including damages for care and loss of services.' This phrase necessarily expands coverage to claims by persons other than the one physically injured. Since the inclusion of these particular consequential damages does not exclude other types of consequential damages, there is no reason why the word 'damages' should not include appellee's claim for damages and attorney's fees."

Cases cited by Hooker Glass on this point include cases in which hospital bills and loss of services claims incurred by a husband have been held to be arising out of the hazard defined. This is the only example of consequential damages cited. We think, since there is in "Coverage A," an express provision which "expands coverage" to "damages for care and loss of services," it necessarily follows that other consequential damages not expressly covered are excluded and are not part of the coverage. If the parties intended to include, as consequential damages, indemnity liability as may be "imposed by law," it could have done so only under "Division 5—Contractual," for which no premium was paid, and in the area in which the premium for Division 5 would have been set forth, there appears the word "NIL." We find no merit in this contention.

Hooker Glass further contends that it is "a second person who sustained damages arising out of the accident, and hence the limit for 'one accident' applies." It argues that the schedule of charges "shows coverage of $10,000 for 'each person' and $20,000 for 'each accident.' This is what the premium was paid for, and no part of this coverage has been used except the $10,000 paid to the original plaintiff, Guetter."

We agree, as Hooker Glass asserts, that, as retailer, it is a "person," and it sustained "damages" to the extent covered by the judgment on the counterclaim. However, we do not agree that "the more natural way to read the limit of liability as to 'each person' is that it covers all damages sustained by one person arising out of bodily injury, sickness or disease, including death, and the limit for 'each accident' is all damages sustained by two or more persons arising out of bodily injury, sickness or death."

The only Illinois case cited on this point by either party is Ravenswood Hospital v. Maryland Casualty Co., 280 Ill 103, 117 NE 485 (1917). There, a wife recovered for injuries sustained, and her husband brought another suit for damages and loss sustained by him on account of the injuries to his wife. In rejecting the husband's claim, which exceeded the $5,000 limit paid to the wife, the court said (p 109):

> "This language is too plain and clear to leave any doubt as to its meaning. It specifically limits appellant's liability to $5,000 for injury or death to one person, irrespective of the number of persons who may make claim to damages on account of the injury to such person. In this case but one person was injured,—Mrs. Appel,—and under the conditions of the policy the appellant's liability was limited to $5,000 on account of such injury. For this reason we think the Appellate Court was

171

right in refusing to allow appellee's claim for such item."

The husband's claim for care and loss of services resulting from his wife's injuries, which exceeded the $5,000 limit, was rejected.

8 Appleman on Insurance, Ch 203, § 4891, refers to the consequential injury such as hospital bills or loss of services, and states that such do not come under the "total" amount of the policy. He states:

> "It has been held that these different types of injuries cannot be split up, in order to bring the claim within the higher policy limits; they are regarded as essentially injuries to one person, so that the lower policy limits applicable to injuries sustained by any one person would govern."

In Couch, § 1871, numerous cases are cited for the proposition that "a policy limiting liability for injuries to one person to $5,000, and, subject to the same limit for each person, to $10,000 in case of injuries to more than one person, the word 'injuries' means 'bodily injuries,' and limits the indemnity, where but one person receives bodily injuries, to $5,000, no matter how many may recover because of such injuries, as, for instance, where a wife is injured and both husband and wife recover because of such injury." Also, see Williams v. Standard Accident Ins. Co., 188 F2d 206 (1951), and New Amsterdam Casualty Co. v. Hart, 153 Fla 840, 16 So2d 118 (1943).

In the light of the foregoing authorities and Ravenswood Hospital v. Maryland Casualty Co., 280 Ill 103, 117 NE 485, we believe the terms of "Coverage A" and "6. Limits of Liability—Coverage A," taken and understood according to their plain, ordinary and popular sense, limits the inclusion of "damages for care and loss of services" to "arising out of bodily injury . . . sustained by one person in any one acci-

172

dent." We hold Hooker Glass is not a second person who sustained damages arising out of the accident, so as to come within the terms of the $20,000 limit for "each accident." Plaintiff Guetter was the "one" person injured within the meaning of the insurance policy, and the payment of $10,000 to him exhausted Highway's liability.

For the reasons stated, the judgment appealed from is reversed.

Reversed.

BURMAN and KLUCZYNSKI, JJ., concur.